UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:24-cr-00104-TWP-MJD-01 |
| RICHARD HARRIS, JR., | ) ) ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Richard Harris, Jr.'s ("Harris") Motion to Suppress (Filing No. 37). Harris is charged by Indictment with Unlawful Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (Filing No. 18.) Harris seeks an order suppressing all evidence obtained following an illegal traffic stop. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court states its findings of fact and conclusions of law and determines that the Motion to Suppress should be **denied**.

I.    **FINDINGS OF FACT**

The Government filed its Response in opposition to Harris' Motion on September 9, 2024, and argues that Harris' Motion should be denied without a hearing. (Filing No. 44.) The Court agrees. There are no material factual disputes to be resolved, so no evidentiary hearing is necessary. *United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022).

In approximately 2023, law enforcement began investigating Harris for drug trafficking. (Filing No. 44-1 at 2.) Throughout the investigation, Harris was observed driving a 2007 black Chevrolet Tahoe bearing Indiana license plates that was registered in his name ("the Tahoe"). *Id.* at 3. Officers were able to obtain a search warrant for Harris' cell phone, *id.* at 2, and on March

20, 2024, investigators conducted a controlled buy in which a confidential informant purchased fifty-six grams of methamphetamine from Harris.  *Id.* at 2-3.

On May 21, 2024, Task Force Officer William Jeffers ("TFO Jeffers") of the Drug Enforcement Agency ("DEA")[1] was conducting street surveillance in an unmarked police vehicle on West 3rd Street in Bloomington, Indiana, as part of the Harris investigation.  (Filing No. 44-1 at 3.)  At approximately 5:45 p.m., BPD Detective Wade Berry informed TFO Jeffers that he had observed Harris' Tahoe leaving a known drug location just north of West 3rd Street.  *Id.*  TFO Jeffers then located the Tahoe and "paced" it traveling 45 miles per hour in a posted 25 mile per hour zone.  *Id.*  Because TFO Jeffers was in an unmarked vehicle that did not have a certified calibrated speedometer, he relayed information regarding the potential traffic violation to BPD Detective Blake McCamey, who in turn contacted Richard Klun ("Trooper Klun") of the Indiana State Police ("ISP") who was conducting a moving patrol nearby.  *Id.* at 3-4.

At approximately 6:11 p.m., Trooper Klun, driving a fully marked ISP police vehicle, located the Tahoe and began to follow it.  (Filing No. 44-2 at 2.)  As he approached the vehicle, he observed that the license plate displayed an expiration date of May 21, 2024.  (Filing No. 44-2 at 3.)  Using his patrol car's Certified Speedometer, he determined that the vehicle was traveling over 30 miles per hour in a 25 mile per hour zone and conducted a traffic stop.[2]  *Id.* at 5.  Trooper Klun approached the driver's side of the vehicle and identified Harris as the driver by way of Harris' Indiana Driver's License.  *Id.*  Upon reviewing Harris' license and registration, Trooper Klun again observed that the vehicle's registration would expire that day, on May 21, 2024.  *Id.*  Trooper Klun asked Harris if there were any weapons in the vehicle and Harris responded in the negative.  *Id.* at

---

[1] TFO Jeffers is also a Detective for the Bloomington Police Department ("BPD").

[2] The GPS system in Trooper Klun's vehicle also recorded his speed while following the Tahoe at 32 miles per hour.  *Id.*

2

5–6. Trooper Klun also asked if Harris knew he was driving in a 25 mile per hour zone and whether there was a reason he was driving so fast. *Id.* at 6. Harris responded that he "was just trying to get home." *Id.* Trooper Klun then asked Harris to exit the vehicle, but Harris refused. As a result, Trooper Klun removed Harris from the Tahoe and placed him in handcuffs. *Id.* When Trooper Klun returned to his patrol car, he performed a formal vehicle registration status check using the mobile data terminal inside the car, and the registration came back expired. *Id.* at 6–7.

While Trooper Klun was performing the traffic stop, a nearby BPD K-9 unit arrived at the scene. *Id.* at 7. The BPD K-9 performed a free air sniff around the exterior of the Tahoe and alerted positively to the presence of narcotics. *Id.* Trooper Klun then conducted a search inside the Tahoe and found a plastic bag containing synthetic marijuana, a burnt hand-rolled cigarette containing marijuana, and a digital scale with white powder residue that field tested positive for heroin. *Id.* As a result of his findings, Trooper Klun transported the vehicle to a local ISP outpost for a more thorough search. *Id.* That search uncovered a loaded semi-automatic handgun, another digital scale with white residue that field tested positive for cocaine, and a loaded extended magazine. *Id.* at 7–8. Officers later searched law enforcement databases and discovered that the handgun was stolen, and that Harris had a prior felony conviction for being a felon in possession of a firearm. *Id.* at 8. Harris was sentenced to 84 months' imprisonment for that crime and was on supervised release at the time of the instant offense. *Id.*

On May 22, 2024, the Government filed a criminal complaint against Harris for Unlawful Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (Filing No. 1 at 1.) A grand jury indicted him for the offense on June 5, 2024. (Filing No. 18.) Harris retained counsel and subsequently filed this Motion to Suppress. (Filing No. 37.)

3

## II.     CONCLUSIONS OF LAW

Harris contends that there was no reasonable suspicion to stop his vehicle and, therefore, the stop violated the Fourth Amendment to the U.S. Constitution. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops constitute "seizures" under the Fourth Amendment and must therefore be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809 (1996). Warrantless stops are reasonable when officers reasonably believe the driver has committed a traffic violation, even a minor one. *United States v. Radford*, 39 F.4th 377, 384 (7th Cir. 2022); *United States v. Phillips*, No. 23-1692, 2024 WL 3842092, at *2 (7th Cir. Aug. 16, 2024). "Because traffic stops are typically brief detentions, more akin to *Terry* stops than formal arrests, they require only reasonable suspicion of a traffic violation––not probable cause." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).

Reasonable suspicion to support a traffic stop requires "more than a hunch but less than probable cause" and is determined under the totality of the circumstances known to the officer at the time of the stop. *United States v. Mays*, 819 F.3d 951, 955 (7th Cir. 2016). This is an objective standard; an officer's subjective motivations for detaining a suspect are irrelevant. *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). However, if the officer is mistaken in his belief that the suspect committed an offense, then we ask whether that mistake was objectively reasonable, "still without regard to the 'subjective understanding of the particular officer involved.'" *Id.* (citing *Heien v. North Carolina*, 574 U.S. 54, 66 (2014)). An officer's objectively reasonable mistake of law can provide reasonable suspicion for a traffic stop. *See id.*

The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the stop. *Jackson*, 962 F.3d at 357. Should the government fail to carry its burden, the court will exclude from the proceedings evidence seized as a result of the stop. *See United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018).

### III.   DISCUSSION

Harris argues that the initial traffic stop was unlawful for two reasons. First, he asserts that "pacing" by a federal DEA agent to enforce local traffic laws is prohibited. Second, he argues that Trooper Klun lacked reasonable suspicion to stop him because the registration on the Tahoe had not yet expired. (Filing No. 41 at 2–8.) In response, the Government contends that Trooper Klun had reasonable suspicion to stop Harris because: 1) Trooper Klun knew about the ongoing drug investigation, including Harris' presence in a known drug location immediately before he was stopped; 2) Trooper Klun personally observed Harris commit a speeding violation; and 3) Trooper Klun reasonably believed that the Tahoe's vehicle registration had expired. (Filing No. 44 at 9–15). The Court will address each argument in turn.

First, the Government is correct that the knowledge of the officers involved in the investigation is imputed to Trooper Klun, to whom they relayed the information about Harris' activity and ostensibly directed to conduct the traffic stop. *See United States v. Coates*, No. 22-1924, 2023 WL 2523501, at *3 (7th Cir. March 15, 2023) (explaining the collective-knowledge doctrine). The Government acknowledges that Harris' presence in an area known for drug activity is not, by itself, sufficient to support the reasonable belief that he was committing a crime when he was stopped. *United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012). The Fourth Amendment permits brief investigative stops only if the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Id.* (citing *United States v.*

5

*Sokolow*, 490 U.S. 1, 7 (1989)). The Government does not contend, for example, that Harris was on a drug run before he was stopped. *See, e.g.*, *United States v. Ochoa-Lopez*, 21 F.4th 1024, 1027 (7th Cir. 2022) (officers had reasonable suspicion to stop the defendant when the defendant's car arrived in a suspected drug location immediately after he gathered contraband). Nor do they maintain that officers observed Harris handling drugs or money, or otherwise provide evidence that would lead a reasonable officer to believe that Harris was, at the time, trafficking in narcotics. *See id.* Although the record contains evidence that Harris sold drugs in a single controlled buy two months earlier, that evidence is too stale to give rise to the reasonable suspicion that Harris was committing a crime on the day he was pulled over. *Cf. United States v. Nicksion*, 628 F.3d 368, 376 (7th Cir. 2010) (confidential informant made controlled drug purchase from the defendant five days before the arrest and paid the defendant on the day of the stop); *Coates*, 2023 WL 2523501, at *3 (two controlled buys conducted one week before the defendant's arrest). Therefore, Trooper Klun's knowledge that Harris was observed in an area known for drug activity right before he was stopped is insufficient to support reasonable suspicion.

Second, the Government asserts that Trooper Klun's firsthand observation of Harris' traffic violation supported the traffic stop. Ind. Code § 9-21-5-12(c) provides that "[a] person who exceeds a speed limit established [by appropriate signs giving notice of the limit] commits a Class C infraction." Harris does not dispute that he was driving over the speed limit in violation of the posted signage at any point during the investigation. He argues only that it was unlawful for TFO Jeffers—who is also a BPD Detective—to use the pacing method to calculate his speed and enforce the violation against him. Harris relies on a decision from the Western District of North Carolina in *U.S. v. Massey*, 3:03CR229-MU (W.D.N.C. April 11, 2006), for the proposition that the practice of pacing is prohibited. The facts in this case are distinguished because the police department

6

involved in the *Massey* traffic stop had a policy which forbid its officers from using the pacing method of speed measurement as the basis for a traffic stop. *Id*. But there is nothing in the record to suggest that pacing was prohibited by the officers here, or that TFO Jeffers was precluded from conducting undercover surveillance and reporting observed violations to local patrol officers. Moreover, it was Trooper Klun, not TFO Jeffers, who "enforced" the traffic violation against Harris. Trooper Klun, while aware of the potential previous infraction reported by TFO Jeffers, personally observed Harris driving over 30 miles per hour in a posted 25 mile per hour zone and conducted a traffic stop based on his firsthand account. Even if Trooper Klun was motivated to stop Harris based on TFO Jeffers' report or other factors related to the investigation, those factors are irrelevant where the stop is supported by independent, even minor, traffic violations. *See Radford*, 39 F.4th at 384; *Whren*, 517 U.S. at 813.

Finally, Harris argues that Trooper Klun did not have reasonable suspicion for the stop because the officer was mistaken about the time at which the vehicle's registration expired. (Filing No. 41 at 2–3.) Ind. Code § 9-18.1-11-2(b)(2) provides, "a person who owns or operates a vehicle may not operate or permit the operation of a vehicle that . . . has expired license plates." The Code further provides that "[a] person that operates or permits the operation of a motor vehicle in violation of subsection (b) commits a Class C infraction." Ind. Code § 9-18.1-11-2(c). The registration on the Tahoe driven by Harris expired on May 21, 2024—the same day as the traffic stop. In Harris' view, the registration was valid until 11:59 p.m. that day. Because the stop took place just after 6:00 p.m., he argues the expiration date did not provide reasonable suspicion to stop him. The Government contends, by contrast, that vehicle registrations expire at 12:00 a.m. on the posted expiration date. Both parties rely on competing interpretations of *King v. State*, 153 N.E.3d 324, 327 (Ind. App. Ct. 2020), an Indiana Court of Appeals case in which the court

grapples, for the first time, with when "expiration" occurs, albeit in the context of a driver's license suspension. The Court need not resolve that question here because even if Trooper Klun was mistaken as to the expiration time, the stop was lawful if a reasonable officer in his position were to believe Harris had committed a traffic violation—namely, driving with an expired license plate.

To determine whether Trooper Klun's belief was objectively reasonable, the Court must determine: 1) what facts were known to Trooper Klun at the time of the stop; and 2) based on those facts, whether a reasonable officer in Trooper Klun's position would have concluded that the plate was expired. *Jackson*, 962 F.3d at 358. Trooper Klun declared that when he started following the Tahoe, he observed that the rear license plate displayed an expiration date of May 21, 2024. A reasonable officer in Trooper Klun's position would have believed the registration was expired based on the expiration date displayed on the license plate, time of day notwithstanding. To be sure, when Harris provided Klun with a physical copy of the vehicle's registration, the document indicated that it would expire on May 21, 2024. When Trooper Klun returned to his vehicle to conduct a formal registration status check, the registration for the Tahoe came back "expired." Therefore, even if the registration did not, in fact, expire until 11:59 p.m., Trooper Klun's reasonable belief that the registration was expired at approximately 6:00 p.m. supported the traffic stop.

Moreover, as noted above, Trooper Klun's personal observation of Harris driving above the 25-mph speed limit, is alone, sufficient probable cause to support the initial traffic stop. Accordingly, suppression of the evidence seized during the traffic stop is not warranted.

## IV. CONCLUSION

For the reasons set forth above, Harris' Motion to Suppress ([Filing No. 37](Filing No. 37)) is **DENIED**.

**SO ORDERED.**

8

Date: 10/28/2024

*[Signature]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Terrance Lamont Kinnard
KINNARD ROWLEY POWERS JIMENEZ
tkinnard@krpjlaw.com

Jordan Oliver
DOJ-USAO
jordan.oliver@usdoj.gov